IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| NOAH DUNCAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:24-CV-04172-WJE |
| ) | |
| ) | |
| BELMONT UNIVERSITY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Pending before the Court is Belmont University and Janelle Briscoe's ("Defendants") Motion to Dismiss Plaintiff Noah Duncan's Complaint and suggestions in support. (Docs. 13, 14). Mr. Duncan, proceeding *pro se*, has filed a response and suggestions in opposition. (Docs. 16, 18). Defendants have filed a reply. (Doc. 21). The Court held a hearing on this matter on January 27, 2025. (Doc. 25). The motion is now ripe for consideration. For the reasons set forth below, the Motion to Dismiss is GRANTED.

### I. Background

On August 17, 2020, Mr. Duncan posted a video on the social media platform, TikTok, depicting himself as former police officer Derek Chauvin, who was convicted of murdering George Floyd, "kneeling with his fist in the air after realizing George Floyd was [B]lack," in an attempt, in Mr. Duncan's words, "to show solidarity" with the Black Lives Matter movement. (Doc. 3 at 4, ¶¶ 3-4). Two days later, Mr. Duncan began his undergraduate studies at Belmont University ("Belmont"), a private Christian university in Nashville, Tennessee. (*Id*. ¶ 5). Once made aware of the video, Defendants investigated Mr. Duncan and placed him on academic probation on August 28, 2020, for violating Belmont's Student Code of Conduct. (*Id*. ¶¶ 7-8; Doc. 14 at 11, 17).

Belmont's student policies and disciplinary processes are stated in The Bruin Guide, which includes Belmont's mission statement, values, and code of conduct, which states in part:

> Belmont University's Code of Conduct applies to student behavior occurring from the time of admission until the actual awarding of the degree… For entering students, a student's violation of the Code of Conduct occurring prior to the opening of residence halls for the admitted semester may be addressed through reevaluation of the admission offer. In such cases, the student will receive a written letter stating the decision of the reevaluation. After the opening of residence halls for the admitted semester, a student's behavior will be addressed in accordance with The Bruin Guide's Accountability Process.

(Doc. 14 at 124). On September 5, 2020, Belmont's student residence halls opened for the fall semester. (Doc. 3 at 4, ¶ 10). On November 7, 2020, while on academic probation, Mr. Duncan posted another TikTok video online. In the video he states, "Her: You must be retarded if you think we fuckin." (Doc. 3 at 5, ¶¶ 12-13). From November 29, 2020, to January 5, 2021, Mr. Duncan posted five additional TikTok videos online. (*Id*. ¶ 15). First, Mr. Duncan posted a video that used a clip of sound from the song, "Let's Get Retarded in Here," referring to the Black Eyed Peas sample as "The new TikTok National Anthem." (*Id*. ¶ 16). In the second posted video, Mr. Duncan responds to a viewer comment stating, "I'm straight retard." (*Id*. ¶ 17). In the third video post, Mr. Duncan states that "the concept of slavery should be brought back." (*Id*. ¶ 18). In the fourth video, Mr. Duncan is depicted in a standoff with a "figurative assailant" and states, "Don't move, or RGB dies." (*Id*. ¶ 19). In the fifth video, a viewer comments, "I'm literally sending this to your college bud. Schools won't like this," to which Mr. Duncan responds by gesturing with his middle finger at his phone while stating, "Do it pussy, they know already." (*Id*. ¶ 20). On June 25, 2021, Mr. Duncan reposted a viral Instagram meme stating, "3 STAGES OF REAL NIGGA. TRUGGLE, GRIND, SHINE." (*Id*. ¶ 21).

On July 21, 2021, Defendants deemed these online posts to be in violation of the "Self-Control" and "Individual Worth" policies within Belmont's Student Code of Conduct and

suspended Mr. Duncan. (*Id*. at 6, ¶ 23). The self-control provision prohibits "smoking, sexual conduct, failure to comply with the University officials, infringing on others use or enjoyment of [Belmont] property or activities, violations of [Belmont] policies regarding alcohol and drugs and/or acts that elevate individual desires or impulses to the detriment of others." (*Id*.). The individual worth provision prohibits "physical abuse, threats, intimidation (verbal or otherwise), harassment, hazing, coercion and/or conduct that threatens or endangers the welfare, dignity or worth of any person." (*Id*.).

After being suspended, Mr. Duncan left Belmont and enrolled at the University of Missouri ("MU") in Columbia, Missouri. (Doc. 14 at 11). Thereafter, Mr. Duncan signed an "Authorization to Release Information" form allowing Belmont to release to MU—and discuss with MU—his student records pursuant to the Family Educational Rights and Privacy Act, 20 U.S.C § 1232(g) et seq. ("FERPA"). (Doc. 3 at 6, ¶ 26). The form specifically authorized Belmont to "release and discuss all records related to the conduct process—including charges, evidence, and outcomes or sanctions [Mr. Duncan] was subject to during [his] enrollment." (Doc. 14 at 138). Mr. Duncan alleges MU later considered and relied on this information to expel him. (Doc. 3 at 7, ¶ 30). On November 20, 2023, Mr. Duncan submitted a formal FERPA request form to Defendants for all correspondence and communication between Defendants and MU regarding his misconduct cases and "him as a student." (*Id*. ¶¶ 31-32). The Defendants have not provided Mr. Duncan with any record of their communications with MU. (*Id*. ¶ 35).

## II. Discussion

Following Mr. Duncan's expulsion from MU because he was found "guilty of physical abuse, illegal or unauthorized possession or use of a weapon, and threatening behavior," and after

his unsuccessful attempt to sue MU in this Court, he filed this present action against Defendants on October 3, 2024. (Doc. 3); *Duncan v. Curators of Univ. of Mo.*, No. 24-CV-04096-SRB, 2024 WL 3520847, at *1-2 (W.D. Mo. July 22, 2024), aff'd, No. 24-2501, 2024 WL 5340677 (8th Cir. Sept. 27, 2024). Mr. Duncan asserts the following claims: Count I—Repudiatory Breach of Contract; Count II—Negligence and Negligence Per Se; Count III—Defamation of Character; Count IV—42 U.S.C. § 1983/Violation of 20 U.S.C. 1232(g) (FERPA); Count V—§ 1983/Violation of Free Speech Clause of the First Amendment; and Count VI—§ 1983/Violation of the Due Process Clause of the Fourteenth Amendment.[1] Defendants move to dismiss all claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

A. **Legal Standard**

The Court may dismiss a complaint for "fail[ing] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint survives a Rule 12(b)(6) motion if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. The factual allegations "do not need to be 'detailed,' but they must be 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *In re SuperValue, Inc.*, 925 F.3d 955, 962 (8th Cir. 2019) (quoting *Twombly*, 550

---

[1] Mr. Duncan's opposition brief indicates that Count VI asserts procedural due process rights under the Fourteenth Amendment, although the Complaint cites to the Sixteenth Amendment. (Doc. 18 at 19-20). "A pro se complaint must be liberally construed," and the Court therefore analyzes Count VI as a Fourteenth Amendment claim. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014).

U.S. at 555). Specifically, the standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Determining whether a claim is plausible is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Hamilton v. Palm*, 621 F.3d 816, 818 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). However, the Court must "accept the factual allegations in the complaint as true and draw all reasonable inferences in the nonmovant's favor." *Cook v. George's, Inc*., 952 F.3d 935, 938 (8th Cir. 2020) (citing *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010)).

Additionally, in ruling on a 12(b)(6) motion to dismiss, the Court is not limited to the four corners of the complaint. *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1120 (8th Cir. 2011). "The court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

### B. The Breach of Contract Claims Fail and are Dismissed.

In Count I, Mr. Duncan alleges that Defendants breached their contractual duty to him in four ways. (Doc. 3 at ¶¶ 4-7, 8-9, 22-23, 26-27, 31-32). The first two claims assert that Defendants breached the Student Code of Conduct. (*Id*. at 4-5, ¶¶ 11, 23). The third and fourth claims assert that Defendants breached the "Authorization to Release Information" form when they released allegedly defamatory records to MU and the formal FERPA request form submitted by Mr. Duncan when they failed to provide him with records of their communications with MU. (*Id*. at 6-7, ¶¶ 26-29, 35). Defendants argue that Mr. Duncan fails to allege the existence of any contract that was

breached. (Doc. 13 at 2; Doc. 14 at 13-14; Doc. 21 at 4-7). The Court finds that Mr. Duncan has failed to allege breach of contract claims upon which relief can be granted.

"A federal court exercising supplemental jurisdiction over state law claims in a federal question lawsuit must follow the choice-of-law rules of the forum state." *American Online, Inc. v. National Health Care Discount, Inc*., 121 F. Supp. 2d 1255, 1268 (N.D. Iowa 2000). "Under Missouri's choice-of-law rules, courts apply the substantive law of the state with the "'most significant relationship' to the occurrence and the parties." *Winter v. Novartis Pharms. Corp.,* 739 F.3d 405, 410 (8th Cir. 2014) (quoting *Fuqua Homes, Inc. v. Beattie*, 388 F.3d 618, 621 (8th Cir. 2004). Mr. Duncan's Complaint alleges that the contracting, performance, and subject matters of each of the alleged contracts took place in Tennessee, where Belmont is located and incorporated. (Doc. 3 at 4-7). As such, Tennessee law will apply to the breach of contract claims.

Under Tennessee law, the essential elements of a breach of contract claim include "(1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract; and (3) damages caused by the breach of the contract." *Tolliver v. Tellico Property Village Property Owners Association, Inc*., 579 S.W.3d 8, 25 (Tenn. Ct. App. 2019) (internal quotations omitted). The Court addresses each of Mr. Duncan's breach of contract claims in turn.

a. *Mr. Duncan's claims alleging Defendants' breaches of the Code of Conduct fail.*

Under Tennessee law, a student handbook is not an express contract when it disclaims that its policies constitute a contract. *See Atria v. Vanderbilt Univ*., 142 F. App'x. 246, 255 (6th Cir. 2005). However, the Sixth Circuit has analyzed Tennessee law to find that "the student-university relationship is contractual in nature," although courts "have rejected a rigid application of contract law in this area." *Sifuna v. S. Coll. of Tenn., Inc*., No. 17-5660, 2018 WL 3005814, at *2 (6th Cir. Apr. 5, 2018); *Atria*, 142 F. App'x at 255. Therefore, a contractual student-university relationship

is generally implied and "manuals [and] handbooks… may help define this contractual relationship." *Atria*, 142 F. App'x at 255 (holding that even though Vanderbilt's Student Handbook was not an express written contract, its provisions may be enforced in Tennessee if it creates an implied contract); *Anderson v. Vanderbilt Univ.*, 450 F. App'x 500, 502 (6th Cir. 2011). "A student may raise breach of contract claims arising from a university's alleged failure to comply with its rules governing disciplinary proceedings." *Anderson*, 450 F. App'x at 502. However, "[c]ontracts for private education have unique qualities and must be construed to allow the institution's governing body to meet its educational and doctrinal responsibilities." *Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 890 (M.D. Tenn. 2018) (quoting *Valente v. Univ. of Dayton*, 438 F. App'x 381, 384 (6th Cir. 2011)).

The parties agree that the Bruin Guide does not create an express contract between them. (Doc. 14 at 38; Doc. 18 at 7). However, Mr. Duncan has adequately alleged that the student-university relationship between himself and Defendants created an implied contract, defined by Belmont's Student Code of Conduct. *See Doe*, 334 F. Supp. 3d at 890 (finding an implied contractual relationship existed between Belmont and a student and the specific provisions of the Sexual Misconduct Accountability Process Bruin Guide defined the terms of that relationship).

After posting the first TikTok video on August 17, 2020, prior to the opening of the residence halls, Mr. Duncan was placed on academic probation. Mr. Duncan alleges that the Defendants were permitted to address his behavior through the Accountability Process only after residence halls opened. (Doc. 3 at 4-5, ¶¶ 5-11). However, the Bruin Guide does not prohibit Belmont from applying the Accountability Process to admitted students before the opening of the residence halls. Mr. Duncan's dissatisfaction with the result of the investigation leading to his probation is an insufficient basis for a breach of contract claim. *See Doe*, 334 F. Supp. 3d at 894

(M.D. Tenn. 2018) (finding plaintiff's dissatisfaction with the investigation's outcome was not a viable basis for breach of contract). Because an express contract does not exist and Mr. Duncan has failed to allege that Defendants breached the implied contract created by the student-university relationship, Mr. Duncan fails to state a claim for breach of contract of the Bruin Guide.

Mr. Duncan also argues he did not violate Defendants' "Self-Control" and "Individual Worth" policies, alleging his misconduct "was never a detriment to any person" or "never threatened or endangered the welfare, dignity, or worth of any person." (Doc. 3 at 6, ¶ 23). He further argues that these policies are "are entirely vague, non-specific, indefinite, and inapplicable to [his] alleged misconduct" and that these provisions "are not sufficient to form specific, definite, or discrete obligations for [him] to abide by." (*Id*.). Defendants argue that Mr. Duncan's "bare, conclusory allegation—contradicted by his own admitted conduct—fail to articulate any factual or legal support for these alleged breaches of the Bruin Guide." (Doc. 14 at 19). The Court finds that Mr. Duncan's allegations regarding the "Self-Control" and "Individual Worth" policies fail to adequately plead a breach of contract claim, namely a breach of the Bruin Guide or any resulting damages. *See Tolliver*, 579 S.W.3d at 25 (listing the elements of a breach of contract claim).

    b. *Mr. Duncan's claims based on the FERPA release and request forms fail.*

Mr. Duncan's third and fourth breach of contract claim alleges that Defendants violated their contractual obligations under (1) the FERPA "Authorization to Release Information" form by releasing records to MU that were "defamatory and not at all related to the Plaintiff's disciplinary history" at Belmont and (2) the formal FERPA request form by failing to disclose the requested records to him. (Doc. 3 at 7, ¶¶ 28-29, 31-35). Defendants argue that FERPA release and request forms are not contracts enforceable by students. (Doc. 14 at 14-15). The Court finds Mr. Duncan has failed to plead enforceable contracts exist based on the FERPA release and request forms.

In his suggestions in opposition, Mr. Duncan argues that 20 U.S.C. § 1232(g)(a)(1)(A), stating "Each educational agency or institution shall establish appropriate procedures for the granting of a request by parents for access to the education records of their children… in no case more than forty-five days after the request has been made," creates a right to review his records. (*See* Doc. 18 at 17). However, the Supreme Court has expressly rejected the notion that FERPA, a law protecting the privacy of student education records, creates a private right of action, which has been followed by the Sixth Circuit. *Gonzaga University v. Doe*, 536 U.S. at 290 ("FERPA "contain[s] no rights-creating language… and therefore create[s] no rights enforceable under § 1983; *see also Bevington v. Ohio Univ.*, 93 F. App'x 748, 750 (6th Cir. 2004) ("… there is no private right of action under the FERPA"). Accordingly, Count I is dismissed for failure to state a claim upon which relief can be granted.

## C. Negligence and Negligence Per Se Claims Fail and are Dismissed.

In Count II, Mr. Duncan asserts negligence and negligence per se claims, alleging that Defendants acted "negligently, arbitrarily, capriciously, and maliciously" toward him during and after his time at Belmont. (Doc. 3 at 8, ¶¶ 5-10). Defendants argue Mr. Duncan has failed to establish a duty of care for both claims. (Doc. 14 at 19-20, Doc. 21 at 7-8). The Court finds Mr. Duncan has failed to articulate a duty of care upon which relief can be granted for both claims.

Under Tennessee law, a negligence claim requires five elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause. *Cotten v. Wilson*, 576 S.W.3d 626, 637 (Tenn. 2019) (internal quotations omitted).

Mr. Duncan argues that Defendants have a duty "not to take action against [him] that is considered arbitrary, capricious, or in bad faith," citing *Ewing v. Board of Regents of University of*

*Michigan*, 742 F.2d 913, 916 (6th Cir. 1984). (*See* Doc. 3 at 8, ¶ 4). However, the case Mr. Duncan cites was reversed the following year and no other Tennessee authority establishes that a university has a duty not to act "arbitrarily, capricious, or in bad faith" toward a student. *See Regents of University of Michigan v. Ewing*, 474 U.S. 214, 214 (1985).

Regarding Mr. Duncan's negligence per se claim, he has to establish that (1) the defendant violated a statute or ordinance that imposes a duty or prohibition for the benefit of a person or the public; (2) the injured party is within the class of persons intended to benefit from or be protected by the statute; (3) the negligence was the proximate cause of the injury. *Shaw v. Metro. Gov't of Nashville & Davidson Cnty.*, 596 S.W.3d 726, 734 (Tenn. Ct. App. 2019). However, Mr. Duncan has failed to identify any statutory or regulatory duty of care which Defendants have violated. Accordingly, Mr. Duncan has failed to establish a duty of care for both claims and Count II is dismissed for failure to state a claim upon which relief may be granted.

### D. Defamation of Character Claim Fails and is Dismissed.

In Count III, Mr. Duncan argues that the Defendants "intentionally and maliciously defamed" him when they communicated to MU that he had violated Title IX on two occasions, which he alleges never occurred. (Doc. 3 at 9, ¶¶ 8-9). Defendants argue Mr. Duncan consented to the release of the information. (Doc. 14 at 21-23). The Court finds that Mr. Duncan has failed to allege that Defendants committed defamation.

In defamation cases, Missouri law favors the substantive law of the state where the defamatory statement was published. *Brandenburg v. Life & Health Ins. Co. of Am.*, No. 4:03CV00565 TCM, 2004 WL 5500119, at *4 (E.D. Mo. May 11, 2004) (internal citation omitted). Missouri law applies because the statements at issue were made by Defendants to MU in Missouri. The elements of defamation in Missouri are: 1) publication, 2) of a defamatory statement, 3) that

identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation." *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. 2000). "Consent is a privilege that protects a speaker from liability for making a defamatory statement." *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 71 (Mo. banc 2000).

Mr. Duncan consented to Defendants releasing his student records to MU when he signed the release form. To the extent Mr. Duncan argues he did not consent to Defendants sharing false information with MU, his claim still fails. (*See* Doc. 3 at 9, ¶¶ 8-9, Doc.18 at 15-16). In a defamation claim, the requisite degree of fault for a private figure is negligence. *Overcast*, 11 S.W.3d at 70. By alleging that Defendants acted "intentionally and maliciously" without further factual support, Mr. Duncan has failed to provide factual support that Defendants negligently shared information with MU, much less intentionally and maliciously. *See Iqbal*, 556 U.S. at 679. Accordingly, Count III is dismissed for failure to state a claim upon which relief can be granted.

### E. § 1983/Violations of FERPA and the First and Fourteenth Amendments Fail and are Dismissed.

Mr. Duncan's final three counts assert § 1983 claims under FERPA, the First Amendment, and the Fourteenth Amendment, respectively. (Doc. 3 at 10-14; Doc. 18 at 19-20). Mr. Duncan argues Defendants acted "in nexus with" MU to deprive him of his constitutional rights. (Doc. 3 at 12, ¶14, 14 ¶ 14). Defendants argue they are not subject to § 1983 liability because Defendants are not state actors and have not committed state actions. (Doc. 14 at 23-24). The Court finds that Defendants are not subject to § 1983.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must show [1] that he was deprived of a right secured by the Constitution and the laws of the United States and [2] that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013). A private actor may be liable under § 1983 if it is a "willful participant in joint

activity with the State," for which a plaintiff must plausibly allege "a meeting of the minds" between the two actors. *Magee v. Tr. of the Hamline University., Minn.*, 747 F.3d 532, 536 (8th Cir. 2014) (internal citations omitted).

As discussed above, FERPA does not create a private right of action, and therefore Defendants cannot be sued.[2] Additionally, Defendants are not state actors. *See Magee*, 747 F.3d at 534 (finding a private university and dean of its law school were not state actors and thus not subject to liability under § 1983). In a related case, MU was found not to be a "person" liable under § 1983. *See Duncan*, 2024 WL 3520847, at *8. Even assuming MU is a state actor, Mr. Duncan has failed to plausibly allege a "meeting of the minds" between Defendants and MU to deprive him of his constitutional rights. *See Magee*, 747 F.3d at 536. Furthermore, the Eighth Circuit has held that furnishing information to a state actor is insufficient to constitute state action. *See Gibson v. Regions Financial Corp*, 557 F.3d 842, 846 (8th Cir. 2009) (finding "the mere furnishing of information to a law enforcement officer, even if the information is false, does not constitute joint activity with state officials."). Without additional facts, Mr. Duncan has not "'nudged [his] [constitutional claim[s]' across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680, *quoting Twombly*, 550 U.S. at 570. Accordingly, Counts IV, V, and VI are dismissed for failure to state a claim upon which relief may be granted.

### III. Conclusion

The undersigned finds that Mr. Duncan has failed to state claims upon which relief can be granted. Accordingly, Defendants' Motion to Dismiss (Doc. 13) is GRANTED.

---

[2] The Eighth Circuit has also held that FERPA does not create a private right of action. *See Missouri Child Care Ass'n v. Cross*, 294 F.3d 1034, 1040 n.8 (8th Cir. 2002) ("[FERPA] . . . does not create any individual rights in students or parents that are enforceable in private actions under § 1983.").

All of Mr. Duncan's claims against Defendants are dismissed with prejudice.

Dated this 31st day of January, 2025, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*
Willie J. Epps, Jr.
Chief United States Magistrate Judge